IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RAMONA ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>KOLBY BRYNDON MILLER et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:26CV35 |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion to dismiss by the United States for lack of subject matter jurisdiction. (Doc. 21.) Plaintiff Ramona Robertson, as Administrator of the Estate of Lillian Marie Powers, alleges that Defendants Kolby Brandon Miller, Miller Site Services, LLC, the United States, Johnathan Lujan, and Piedmont Health Services, Inc. ("Piedmont") are liable for events related to Powers's death. (Doc. 12.) The motion is fully briefed and ready for decision. For the following reasons, the motion will be granted and the complaint against the United States will be dismissed.

## I. BACKGROUND

The relevant facts for purposes of this motion are based on the well-pleaded allegations of the complaint, which are accepted as true for purposes of this motion and viewed in the light most favorable to Robertson as the non-moving party.

Robertson is the administrator of the Estate of Lillian Marie Powers. (Doc. 12 ¶ 8.) Piedmont is an entity that receives funding from the Department of Health and Human Services, and "has Federal Public Health Service deemed employment status." (Id. ¶ 26.)

On October 20, 2023, Piedmont employee Defendant Jonathan Lujan, a "transport driver" for Piedmont and the Department of Health and Human Services, drove a van that picked up Powers at her residence "to take [Powers] on a planned day trip to a senior care facility for social interaction and activities." (Id. ¶¶ 22, 31, 46.) Powers was wheelchair bound and relied on Lujan to "place her wheelchair in the van and safely secure her." (Id. ¶ 33.) However, Lujan did not properly place and secure Powers. (Id. ¶ 34.)

Around 10:34 a.m., Lujan was driving 62 miles per hour, notwithstanding a posted speed limit of 55 miles per hour. (Id. ¶ 38.) At this time, Miller's vehicle entered the road "without ever stopping" and collided with Lujan and Powers's van. (Id. ¶ 44.) Robertson alleges that Miller's vehicle "would have been clearly visible to Mr. Lujan had he been paying attention to the road ahead." (Id. ¶ 41.)

Powers was "thrown from her chair onto the floor of the van" by the accident. (Id. ¶ 45.) Lujan, despite being "medically unqualified," "picked [Powers] up and placed her in a wheelchair

on the roadside." (Id. ¶ 46.)[1] On January 26, 2024, Powers passed away "in whole or in part from her wreck-related injuries." (Id. ¶ 49.)

The complaint in this action was filed on January 13, 2026, alleging claims against Miller; Miller Site Services, LLC; and the United States. (Doc. 1.) Miller answered and filed a third-party complaint against Lujan and Piedmont. (Doc. 4.) Robertson filed an amended complaint on March 10, 2026, adding claims against Lujan and Piedmont. (Doc. 12.) On June 2, the United States moved to dismiss the complaint for lack of subject matter jurisdiction. (Doc. 21.) The motion is fully briefed and ready for decision.

## II. ANALYSIS

### A. Legal Standard

"The existence of subject matter jurisdiction is a threshold issue," which the court must consider before addressing the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proving this court's subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When assessing a challenge to subject matter jurisdiction, the court may look beyond the face of the complaint and consider other evidence outside the pleadings without converting the motion

[1] Though not explicitly stated, Robertson appears to contend that Lujan's action exacerbated Powers's injuries. (See id. ¶ 46.)

into one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should dismiss for lack of federal subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768 (citation omitted).

**B. Analysis**

Title 42, U.S. Code, § 233(a) of the Federally Supported Health Centers Assistance Act ("FSHCAA") is "a federal immunity defense for qualifying private health centers that receive federal grant money." Ford v. Sandhills Med. Found., Inc., 97 F.4th 252, 256 (4th Cir. 2024), cert. denied, 145 S. Ct. 1308 (2025). Section 233(a) shields qualifying private health centers from actions "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation[.]" 42 U.S.C. § 233(a) (emphasis added).[2] The effect of the FSHCAA is that if the claim falls within the scope of § 233(a), "the claim is treated as one brought against the United States within the purview of the FTCA," giving the court subject matter jurisdiction over the United States for the claim. Ford, 97 F.4th at 257

[2] It is undisputed for purposes of this motion that Piedmont is a qualifying private health center under Section 233(a), Lujan was acting within the scope of his employment, and transportation was a permissible use of Piedmont's grant funds. (Doc. 28 at 6.)

(citing Hui v. Castaneda, 599 U.S. 799, 802 (2010)). The critical issue in this case is whether Lujan's transportation of Robertson was a "related function" within the meaning of § 233(a).

The United States contends that it is not a proper defendant in this case because the alleged negligence does not fall within the scope of the FSHCAA as defined by 42 U.S.C. § 233(a). (Doc. 22 at 2-3.) The United States argues that the alleged negligence in this case "did not result from the provision of health care functions particularly fitted to doctors, surgeons, dentists, or [similar] health practitioners," and therefore does not fall within the purview of § 233(a). (Id. at 9.) Further, the United States contends that if Congress intended for § 233(a) to cover the operation of motor vehicles, it would have included language to that effect. (Id. at 10 n.1.) Finally, the United States observes that the Health Resources and Services Administration's policy manual states that covered entities will still need to obtain automobile insurance, notwithstanding the protections provided by the Federal Tort Claims Act. (Id. at 11.)

Robertson counters by framing the relevant inquiry as "whether the challenged conduct is intertwined with the provision of medical services." (Doc. 27 at 3.) Roberston contends that "[s]ecuring and safeguarding a medically dependent patient who cannot protect herself – and rendering appropriate care to her when she is injured – are activities 'particularly fitted' to a

provider transporting patients as part of its health-center operations." (Id.) Additionally, Robertson requests that the court grant "leave to take limited jurisdictional discovery before any dismissal" if "the [c]ourt regard[s] the coverage question as factually contested." (Id. at 6.)

The Fourth Circuit has recently analyzed the meaning of "related function." Ford, 97 F.4th 252. The court defined "related function" as "an activity particularly fitted to whatever is connected to whatever proceeds the phrase." Ford, 97 F.4th at 259. In the context of § 233(a), "related" means "a field of health care outside of medicine, surgery, or dentistry." Id. As a result, the court held that "'related functions' explicitly encompasses only the provision of health care," and "in order to trigger immunity [for the qualified health care provider, making the United States a proper defendant], alleged damages giving rise to a lawsuit must arise from the provision of health care." Id. at 260.

Other courts interpreting § 233(a) have come to similar conclusions. For example, the First Circuit concluded that § 233(a) "protects Public Health Service officers or employees from suits that sound in medical malpractice . . . [c]ases in which defendants have successfully invoked these immunity statutes typically involve claims by patients against doctors for damages caused by improper medical treatment." Mendez v. Belton, 739 F.2d

15, 19-20 (1st Cir. 1984) (collecting cases). Likewise, a court in this circuit held that "the statute was intended to cover injuries arising out of the doctor-patient relationship." Logan v. St. Charles Health Council, Inc., No. 1:06CV00039, 2006 WL 1149214, at *2 (W.D. Va. May 1, 2006).[3]

The parties have not cited any case addressing whether transportation is a "related function" to "medical, surgical, or dental" functions, nor has the court's research uncovered any. The parties have both cited North Carolina law in their briefs to support their positions. (See Doc. 27 at 3; Doc. 28 at 3-4.) Ford did not rely on, or even mention, state law in coming to its conclusion that § 233(a) did not cover the claims in that case. See generally 97 F.4th 252. However, because the FSHCAA was designed to allow "health centers to forgo obtaining private malpractice insurance," Youngblood, 200 F.3d at 745, the court will examine North Carolina law relevant to determining what functions "sound in medical malpractice" and are likely to fall within the scope of § 233(a). Mendez, 739 F.2d at 19.[4]

---

[3] Indeed, the Fourth Circuit noted in Ford that "the FSHCAA 'essentially makes the U.S. government the medical malpractice insurer for qualifying . . . health centers, their officers, employees, and contractors, allowing these "deemed" health centers to forgo obtaining private malpractice insurance.'" 97 F.4th at 258 (quoting Dedrick v. Youngblood, 200 F.3d 744, 745 (11th Cir. 2000)) (alterations in original).

[4] Additionally, the statutory definition of a medical malpractice action in North Carolina is very similar to the language in § 233(a). Compare N.C. Gen. Stat. § 90-21.11(2)(a) (medical malpractice action is "[a]

North Carolina defines a medical malpractice action as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a). North Carolina courts "have classified as medical malpractice those claims alleging injury resulting from activity that required clinical judgment and intellectual skill." Gause v. New Hanover Reg'l Med. Ctr., 795 S.E.2d 411, 415 (N.C. Ct. App. 2016). Conversely, "[North Carolina] courts have classified as ordinary negligence those claims alleging injury caused by acts and omissions in a medical setting that were primarily manual or physical and which did not involve a medical assessment or clinical judgment." Id.

A few examples from North Carolina law are illustrative. In Lewis v. Setty, the court held that "removal of the plaintiff from the examination table to the wheelchair did not involve an occupation involving specialized knowledge or skill, as it was predominately a physical or manual activity." 503 S.E.2d 673, 674 (N.C. Ct. App. 1998). Likewise, in Norris v. Rowan Mem'l Hosp.,

---

civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider") (emphasis added), with 42 U.S.C. § 233(a) (shielding qualifying private health centers from actions "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions.") (emphasis added).

Inc., the court concluded that hospital employees' failure to raise bed rails "did not involve the rendering or failure to render professional nursing or medical services requiring special skills," and therefore sounded in ordinary negligence. 205 S.E.2d 345, 348 (N.C. Ct. App. 1974). Finally, in Taylor v. Vencor, Inc., the court concluded that a nursing home's failure to supervise the decedent in a designated smoking area – which was necessary due to "her mental and physical problems" – "did not constitute an occupation involving specialized knowledge or skill" and sounded in ordinary negligence. 525 S.E.2d 201, 203 (N.C. Ct. App. 2000).[5]

Additionally, a court in this circuit analyzed whether injuries caused by a motor vehicle accident fell within the scope of "health care professional services" in the insurance context. Hartford Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co., 606 F. Supp. 2d 602, 608 (E.D.N.C. 2009). The court concluded that "driving . . . cannot reasonably be deemed an 'other similar health care professional service,' in part, because . . . it was

[5] Robertson cites Sturgill v. Ashe Mem'l Hosp., Inc., 652 S.E.2d 302 (N.C. App. 2007), for the proposition that "securement and restraint of a patient [is] a medical procedure that requires the application of clinical judgment" in North Carolina. (Doc. 27 at 3.) However, that case involved a nurse's decision whether to initiate the use of restraints. Sturgill, 652 S.E.2d at 303. Accordingly, the court held that "the decision to apply restraints is a medical decision requiring clinical judgment and intellectual skill[.]" Id. at 306 (emphasis added). Here, Lujan did not make a medical decision about whether or not to secure Powers; instead, the allegation is that Lujan, who is not alleged to be a medical professional in any capacity, incorrectly secured her. (See Doc. 12 ¶¶ 33-34.) As a result, Sturgill is not analogous to this case.

not a 'health service.'" Id. at 610. "Specifically, taking a person from one location to another is simply not like providing a person medical, surgical, dental, nursing, mental, or x-ray services." Id.

Here, Roberston alleges that Lujan picked up Powers to "take [her] on a planned day trip to a senior care facility for social interaction and activities." (Doc. 12 ¶ 31.) Powers "relied on Mr. Lujan to place her wheelchair in the van and safely secure her." (Id. ¶ 33.) Lujan "failed to properly place and secure" Powers, and then subsequently drove in a negligent manner. (Id. ¶¶ 34, 38, 41.) Finally, "the medically unqualified Mr. Lujan picked [Powers] up and placed her in a wheelchair on the roadside prior to the arrival of qualified emergency medical personnel." (Id. ¶ 46.) The import of these allegations is that Powers's alleged damages occurred for three reasons: Lujan's negligent driving, his failure to properly place and secure Powers, and his placement of Powers in her wheelchair after the accident. (See id. ¶¶ 34, 38, 41, 46.) The court addresses these in turn.

As for Lujan's allegedly negligent driving, "taking a person from one location to another is simply not like providing a person medical, surgical, [or] dental . . . services." Hartford, 606 F.Supp.2d at 610; see also Hidalgo v. Wilson Certified Exp., Inc., 676 So. 2d 114, 119 n.8 (La. App. 1 Cir.) ("Driving is not conduct related to health care or professional services rendered or which

should have been rendered"); cf. Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co., 327 F. Supp. 149, 154-55 (W.D. Okla. 1971) ("While [medical driving] may require skill on the part of those who render the service, it does not require knowledge of an advanced type in a field of learning customarily acquired after a long period of specialized intellectual instruction"). Therefore, the court declines to hold that Lujan's driving of Powers to a senior care facility for social interaction and activities is "the provision of health care" within the meaning of § 233(a). Ford, 97 F.4th at 260.

Likewise, the court declines to consider securing a passenger's wheelchair in a transportation van – at least in this context, where Powers was being taken "to a senior care facility for social interaction and activities" (Doc. 12 ¶ 31) – a "related function" to "medicine, surgery, or dentistry." As in Lewis, securing Powers's wheelchair "did not involve an occupation involving specialized knowledge or skill, as it was predominately a physical or manual activity." 503 S.E.2d at 674. Indeed, Robertson alleges that Lujan was "medically unqualified," (Doc. 12 ¶ 46), lending support for the conclusion that Lujan's actions did not involve "rendering or failure to render professional . . . medical services requiring special skills." Norris, 205 S.E.2d at 348.

Whether Lujan's picking up Powers and placing her in the

wheelchair after the accident was a "medical, surgical, dental, or related function" is a somewhat closer question. Robertson contends that "rendering appropriate care to [Powers] when she is injured" qualified as an "activit[y] 'particularly fitted' to a provider transporting patients as part of its health-center operations." (Doc. 27 at 3.)

However, Powers's need for medical assistance – and Lujan's negligent provision of it – did not "arise from any action taken by [Piedmont or Lujan] 'in [their] capacity as doctor[s] responsible for, or in the course of rendering medical treatment for'" Powers. Ford, 97 F.4th at 260 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000)) (cleaned up). Rather, the damages arose from actions taken by Lujan in his capacity as a driver for Powers. (See, e.g., Doc. 12 ¶ 65 (alleging that Lujan "[f]ailed to keep his vehicle under proper control," "[d]rove in a careless and reckless fashion," and "[d]rove without due caution").) After the crash, Lujan is alleged simply to have returned Powers to her wheelchair after she was thrown from it. (Id. ¶ 46.)

At bottom, Robertson's argument is that since Lujan was a "medically unqualified . . . transport driver," Lujan should not have attempted to aid Powers, so that "qualified emergency medical personnel" could provide medical assistance. (Doc. 12 ¶ 46; see also Doc. 27 at 3.) "There is no limiting principle to [Robertson's] position. If § 233(a) applied to any action that a

patient must take in order to receive health care, it would shield [Piedmont] from any and all claims despite their lack of relation to their treatment." Ford, 97 F.4th at 261.

As the United States correctly points out, the conclusion that § 233(a) does not cover this claim is supported by looking to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 5321(d). Section 5321(d) states that for purposes of § 233(a), employees of qualifying tribal organizations and Indian contractors performing "medical, surgical, dental, or related functions" will be deemed Public Health Service employees. However, § 5321(d) goes on to say that employees of qualifying tribal organizations and Indian contractors who incur liability stemming from the "operation of an emergency motor vehicle" will also be deemed Public Health Service employees for purposes of § 233(a). Congress added the "emergency motor vehicle" provision to § 5321(d) in 1990. See Indian Arts and Crafts Act of 1990, Pub. L. No. 101-644, § 203, 104 Stat 4662 (1990). Congress presumably added this language because "medical, surgical, dental, or related functions" did not cover operation of motor vehicles. Cf. Conn. Nat. Bank v. Germain, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous.").

Accordingly, the court concludes that § 233(a) does not apply

to this case.[6] As a result, the court lacks subject matter jurisdiction over the United States for this claim.

**III. CONCLUSION**

For the reasons stated,

IT IS ORDERED that the United States's motion to dismiss (Doc. 21) is GRANTED, and the complaint against the United States is DISMISSED.

/s/ Thomas D. Schroeder
United States District Judge

November 16, 2026

---

[6] Robertson's request for jurisdictional discovery, citing Kerns v. United States, 585 F.3d 187 (4th Cir. 2009), is misplaced. (See Doc. 27 at 6.) Kerns held that "when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." 585 F.3d at 193. However, this "situation" occurs when "the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." Id. Here, the United States does not challenge the merits of Robertson's tort claim, but rather the court's jurisdiction. Whether § 233(a) applies in this case "does not turn on" whether Lujan was negligent in his driving, securing, or post-accident handling of Powers. Wood v. United States, 845 F.3d 123, 132 (4th Cir. 2017). Accordingly, there is no need for jurisdictional discovery.